UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MAINETTI RTS, INC. f/k/a HANGERS UNLIMITED, INC.<br>200 Connell Drive, Suite 3100<br>Berkley Heights, NJ 07922<br><br>                       Plaintiff,<br><br>    v.<br><br>GAR PLASTICS, INC.<br>720 West James Street<br>Columbus, Wisconsin 53925<br><br>                       Defendant. | Civil Action No. 1:21-cv-1316 |

Plaintiff Mainetti RTS, Inc. f/k/a Hangers Unlimited, Inc., a corporation organized pursuant to the laws of the State of Delaware ("Plaintiff" or "RTS"), brings this Complaint against Defendant GAR Plastics, Inc., a corporation formed pursuant to the laws of the State of Wisconsin ("Defendant" or "GAR") for (a) a judgment, declaring that a certain supply agreement entered into by and between Plaintiff and Defendant merely required Plaintiff to supply Defendant with a minimum amount of product, but not that it supply a minimum amount of product for *processing*, and that the sole remedy for Plaintiff's failure to meet such a minimum supply requirement is an extension of the Supply Agreement, but not damage damages, (b) breach of contract, including breach of warranty, breach of payment obligations, breach of a confidentiality provision and breach of indemnity agreement, (c) negligence, and (d) violations of a federal law protecting against the misappropriation of trade secrets. In support, Plaintiff avers as follows:

### NATURE OF THE ACTION, THE PARTIES, JURISDICTION & VENUE

1. Plaintiff Mainetti RTS, Inc. f/k/a Hangers Unlimited, Inc., is a corporation organized

pursuant to the laws of the State of Delaware, with its principal place of business located at 200 Connell Drive, Suite 3100, Berkley Heights, NJ 07922 ("Plaintiff" or "RTS"),

2. Defendant GAR Plastics, Inc., is a corporation formed pursuant to the laws of the State of Wisconsin, with its principal place of business located at 720 West James Street, Columbus, Wisconsin 53925 ("Defendant" or "GAR"). Defendant's registered agent is Mark L. Schwamb II, 720 W. James St., Columbus, WI 53925

3. This action arises out of Defendant's unlawful actions in connection with a written supply agreement the parties entered into on December 13, 2016 (the "Supply Agreement") for Plaintiff's supply of used plastic hangers and, as applicable, Defendant's processing of such used plastic hangers into pelletized and compounded material for Plaintiff's re-purchase and use in its manufacture of new plastic hangers.[1]

4. This Court has subject matter jurisdiction over this dispute, pursuant to 28 U.S.C. 1332, because the Complaint seeks legal remedies in excess of $75,000 and there is diversity of citizenship between Plaintiff and Defendant.

5. This Court has personal jurisdiction over Defendant, as Defendant is incorporated pursuant to the laws of the State of Wisconsin, as citizen of the State of Wisconsin, with its principal place of business located in Columbus, Wisconsin.

6. As set forth above, Plaintiff is a Delaware company, incorporated pursuant to the laws of the State of Delaware, a citizen of the State of Delaware, with its principal place of business located in Berkley Heights, New Jersey.

7. Venue in this Court is proper, pursuant to 28 U.S.C. 1391(b)(2), because a substantial

---

[1] Given the proprietary and confidential nature of the Supply Agreement between Plaintiff and Defendant, the Plaintiff has not attached the Supply Agreement to this Complaint.

2

part of the events or omissions giving rise to the claims asserted occurred in the Eastern District Wisconsin. In particular, Plaintiff maintained an office at 5000 West Electric Avenue, West Milwaukee, 53219, and from this District supplied Defendant with product.

8. Paragraph 23.2 of the Supply Agreement provides that the Supply Agreement and all claims arising out of it are governed by the laws of the State of Wisconsin, and that the parties consent to the non-exclusive jurisdiction of the courts of the State of Wisconsin.

**FACTUAL BACKGROUND**

9. Paragraph (A) under the "Background" heading of the Supply Agreement, provides "The Supplier [Plaintiff] is a producer of scrap material from re-used hangers being either polystyrene and [sic] polypropylene (collectively referred to as "Product")."

10. Paragraphs (B) and (C) under the "Background" heading of the Supply Agreement, provide "The Processor [Defendant] is a processor and trader of recycled industrial plastics" and "[t]he Supplier [Plaintiff] wishes to retain the exclusive services of the Processor to process the Product from the Supplier into a recycled product (the "Compounded Material") on the terms and conditions of this Agreement."

11. Paragraph (E) under the "Background" heading of the Supply Agreement, provides "The parties recognize that Supplier [Plaintiff], by supplying Product to the Processor [Defendant], is foregoing a valuable opportunity to develop its own direct customer base for the Product because Processor may be able to find buyers for the Product and Compounded Material."

12. Paragraph 1.3 of the Supply Agreement provides that its term is five (5) years.

13. Paragraph 2.2 of the Supply Agreement provides that Plaintiff shall pay Defendant for any processing of Product in accordance with the rates set forth in an agreed upon schedule.

14. Paragraph 4 of the Supply Agreement provides that Defendant shall have the right to

purchase Product supplied by Plaintiff in accordance with rates set forth in an agreed upon schedule, and in the event of such purchase Defendant shall pay for such Product within forty-five (45) days of receipt, and Plaintiff shall not be responsible for paying for any processing of such purchased Product.

15. Paragraph 4 of the Supply Agreement further provides that in the event Defendant is owed a fee (beyond the payment due date from Plaintiff for processing of Product), Defendant may off-set such fee owed by Plaintiff from the amount otherwise payable to Plaintiff for Defendant's purchase of Product.

16. Paragraph 2.4 of the Supply Agreement provides that Plaintiff shall deliver to Defendant a minimum of 10,000,000 pounds of product each year of the agreement (the "Annual Minimum"), and if Plaintiff fails to meet the Annual Minimum, "this Agreement shall be extended on a proportional basis."

17. Paragraph 5.1 of the Supply Agreement provides "The Processor [Defendant] shall defend, indemnify, and hold the Supplier [Plaintiff] . . . harmless from and against any and all liability, loss, damage or expense arising out of the Processor's negligence or willful misconduct related to the processing of the Product into Compounded Material."

18. Paragraph 8.2 of the Supply Agreement provides that upon request of Plaintiff, Defendant shall not "sell any Product or Compounded Material to Supplier's customers."

19. Paragraph 12 of the Supply Agreement designates information, disclosed by or on behalf of one party to the other in connection with the Supply Agreement which relates to the discloser, its customers or its business, as confidential information -- which shall be kept secret and not disclosed except as permitted by the terms of the disclosure, and shall not be used by such

4

party except for performing its obligations under the Supply Agreement, and further shall not be used by such party to gain an unfair advantage over or compete with the discloser.

20. Paragraph 13.2 of the Supply Agreement provides Plaintiff may terminate the agreement if Defendant "is in material breach of any term of this Agreement and any extensions thereto which is incapable of remedy or if capable of remedy is not remedied within thirty (30) days of the Supplier [Plaintiff] giving notice to the Processor [Defendant] that it requires such breach to be remedied."

21. Paragraph 14.1.3 of the Supply Agreement provides that upon termination, "all other rights and obligations shall immediately cease without prejudice to any rights, obligations, claims (including claims for damages for breach) and liabilities which have accrued prior to the Termination Date.

22. Prior to entering into the Supply Agreement, Defendant represented to Plaintiff that it could process, and had experience processing Product into Compounded Material that was of a quality and consistency that Plaintiff could use it in the manufacture of new plastic hangers.

23. Plaintiff relied upon both Defendant's representations in entering the Supply Agreement.

24. It was not until January 2019 that Defendant began producing for Plaintiff Compounded Material in the form of high impact polystyrene pellets ("HIPS") from the polystyrene Product Plaintiff supplied to it.

25. From the beginning of Plaintiff's receipt and attempted use of the HIPS, it experienced problems with all efforts to utilize it in the manufacture of new plastic hangers.

26. In or about June or July 2019, Plaintiff and Defendant met to discuss the HIPS' gas content (it was not dense enough), and consistency -- as it was brittle.

27. Plaintiff demonstrated to Defendant how the HIPS failed to meet certain quality control tests for source materials, and ultimately caused Plaintiff's newly manufactured hangers to fail its quality control tests.

28. Defendant acknowledged the problems with the HIPS and allegedly attempted to correct the issues with the HIPS.

29. As part of that process, Plaintiff supplied Defendant for re-processing HIPS that were the result of Defendant's prior substandard processing of Plaintiff's Product, and for which Plaintiff had already paid Defendant.

30. Despite its efforts to reprocess already processed HIPS, Defendant was unable to solve its problems with the production of HIPS – which constitutes a material breach of the Supply Agreement.

31. Plaintiff repeatedly advised Defendant of its inability to solve the problems with its production of HIPS, and demanded that Defendant cure its breach.

32. Despite Plaintiff's repeated oral and written demands, Defendant has failed and refused to cure its breach with respect to its production of HIPS.

33. Between in or about June 2020 and September 2020, Defendant issued purchase orders to Plaintiff for the purchase of Product at specified rates (the "Orders") pursuant to the Supply Agreement.

34. Plaintiff accepted and timely fulfilled all of the Orders per the terms therein, and invoiced Defendant (the "Invoices") for each of the Orders upon shipment.

35. Each of the Invoices confirms that, just as specified at Paragraph 4 of the Supply Agreement, the payment terms were "Net 45 Days."

36. Defendant accepted all of the goods shipped pursuant to the Orders, and never

6

rejected, refused or otherwise objected to any of the Orders.

37. Defendant's time has expired to pay all of the Invoices.

38. The total amount billed for the Invoices, and the amount past due and owing on the Invoices is $518,478.94 – which constitutes a material breach of the Supply Agreement.

39. Despite Plaintiff's repeated oral and written demands that Defendant cure its breach, and Plaintiff's issuance and transmittal to Defendant of account statements showing Defendant's balance due and owing to Plaintiff, Defendant has failed and refused to pay any of the Invoices and cure its breach.

40. As a result of Defendant's breach -- in or about September 2020 or later, Plaintiff terminated the Supply Agreement.

41. Plaintiff timely paid Defendant all processing fees for Defendant's production HIPS.

42. Plaintiff does not now, and did not during the period of time that Defendant's payment for the Invoices was due, owe Defendant a processing fee beyond the payment due date for Defendant's production of HIPS.

43. As a result of having been party to the Supply Agreement, Defendant was exposed to Plaintiff's confidential information, including the source(s) from which Plaintiff obtained Product.

44. In or about June 2021, after Defendant had materially breached and failed to cure its breaches under the Supply Agreement, Plaintiff's contract with a primary supplier of Product ("Primary Supplier"), as then in effect, terminated.

45. As a result of their business relationship, Defendant knew that Plaintiff's contract with a Primary Supplier, as then in effect, had terminated.

46. The existence of Plaintiff's contract with and reliance upon, as well as the identity of such Primary Supplier was all confidential information under the Supply Agreement.

7

Case 2:21-cv-01316-BHL   Filed 11/16/21   Page 7 of 13   Document 1

47. Despite the confidential nature of such information, following the termination of Plaintiff's contract with its Primary Supplier, Defendant used the confidential information to do business with and receive a supply of Product from the Primary Supplier, and in reliance upon such confidential information entered into a direct contract with the Primary Supplier for the supply of Product in direct competition with Plaintiff.

## COUNT I – DECLARATORY JUDGMENT

48. Plaintiff repeats the allegations contained in Paragraphs 1 through 47 of this Complaint, as if more fully set forth at length herein.

49. While Plaintiff

50. contends that, until Defendant committed a material breach of the Supply Agreement and failed to cure it within thirty (30) days of notice, it was only required to supply Defendant with a specific amount of Product in a specified period for Defendant's purchase – Defendant contends that Plaintiff was required to supply it with a specific amount of Product for *processing* in a specified period.

51. While Plaintiff contends that Defendant's sole remedy for Plaintiff's failure to meet any alleged minimum supply requirements is the further extension of the term of the Supply Agreement – Defendant contends that such failure constitutes a breach for which damages are recoverable.

52. There is a justiciable controversy by and between Plaintiff and Defendant concerning the meaning and interpretation of the Supply Agreement.

53. The controversy between Plaintiff and Defendant is justiciable (and not advisory), the

controversy is ripe for the Court's adjudication of the dispute, and the Court's adjudication of the dispute will terminate the controversy over whether the Defendant materially breached the Supply Agreement.

54. Plaintiff seeks a judgment, declaring that the Supply Agreement entered into by and between Plaintiff and Defendant merely required Plaintiff to supply Defendant with a minimum amount of Product, but not that it supply a minimum amount of Product for processing for Plaintiff, and that the sole remedy for Plaintiff's failure to meet such a minimum supply requirement is an extension of the Supply Agreement, but not monetary damages.

### **COUNT II – BREACH OF CONTRACT (Implied Warranty of Merchantability)**

55. Plaintiff repeats the allegations contained in Paragraphs 1 through 53 of this Complaint, as if more fully set forth at length herein.

56. Defendant's processed Product (HIPS) carried with it an implied warranty of merchantability that the HIPS would be useable by Plaintiff in it manufacture of new plastic hangers – the declared, agreed upon and known purpose of the HIPS.

57. Defendant's processed Product (HIPS) was not of a quality and consistency sufficient for Plaintiff's use in its manufacture of new plastic hangers.

58. As a result, Defendant breached its implied warranty of merchantability, causing Plaintiff to suffer damages and rendering the Supply Agreement terminable/voidable at will by Plaintiff.

### **COUNT III – NEGLIGENCE**

59. Plaintiff repeats the allegations contained in Paragraphs 1 through 57 of this Complaint, as if more fully set forth at length herein.

60. Defendant was to provide a service: "for the processing of scrap material from re-

9

used plastic hangers and subsequent sale of the product and processed material."

61. Defendant owed a duty to Plaintiff to provide the aforementioned service in a manner that was sufficient for Plaintiff's use in its manufacture of new plastic hangers.

62. Defendant breached that duty by failing to process Product (HIPS) of a quality and consistency sufficient for Plaintiff's use in its manufacture of new plastic hangers.

63. Defendant was negligent in processing the Product into HIPS.

64. As a result, Plaintiff has suffered damages, for which Defendant is required to compensate Plaintiff.

## COUNT IV – BREACH OF CONTRACT (Account Stated/Invoices)

65. Plaintiff repeats the allegations contained in Paragraphs 1 through 63 of this Complaint, as if more fully set forth at length herein.

66. Pursuant to the Supply Agreement, Plaintiff issued the Invoices to Defendant for Orders that it shipped.

67. Defendant accepted all of the Orders, and never rejected, refused or otherwise objected to any of the Orders.

68. Defendant's time has expired to pay all of the Invoices.

69. The total amount billed for the Invoices, and the amount past due and owing on the Invoices is $518,478.94 – which constitutes a material breach of the Supply Agreement.

70. Despite Plaintiff's demands that Defendant cure its breach, and Plaintiff's issuance and transmittal to Defendant of account statements showing Defendant's balance due and owing to Plaintiff, Defendant has failed and refused to pay any of the Invoices and cure its breach.

71. As a result, Plaintiff has suffered damages, and the Supply Agreement is terminable/voidable at will by Plaintiff.

## COUNT V – BREACH OF CONTRACT (Confidentiality)

72. Plaintiff repeats the allegations contained in Paragraphs 1 through 70 of this Complaint, as if more fully set forth at length herein.

73. As a result of being a party to the Supply Agreement, Defendant knew that Plaintiff's contract with a Primary Supplier had terminated.

74. The existence of Plaintiff's contract with and reliance upon, as well as the identity of its Primary Supplier was all confidential information under the Supply Agreement.

75. Despite the confidential nature of such information, following the termination of Plaintiff's contract with its Primary Supplier, Defendant used the confidential information to do business with and receive a supply of Product from such Primary Supplier, and in reliance upon such confidential information entered into a direct contract with that Primary Supplier for the supply of Product in direct competition with Plaintiff.

76. Defendant's use of Plaintiff's confidential information constitutes a breach of the Supply Agreement, causing Plaintiff to suffer damages, and rendering the Supply Agreement terminable/voidable at will by Plaintiff.

## COUNT VI – MISAPPROPRIATION OF TRADE SECRETS
## (DEFEND TRADE SECRETS ACT)

77. Plaintiff repeats the allegations contained in Paragraphs 1 through 75 of this Complaint, as if more fully set forth at length herein.

78. As a result of being a party to the Supply Agreement , Defendant knew that Plaintiff's contract with a Primary Supplier had terminated.

79. The existence of Plaintiff's contract with and reliance upon, as well as the identity of its Primary Supplier was a trade secret.

80. Despite the protected nature of such information, following the termination of

Plaintiff's contract with its Primary Supplier, Defendant used Plaintiff's trade secret to do business with and receive a supply of Product from the Primary Supplier, and in reliance upon such trade secret entered into a direct contract with the Primary Supplier for the supply of Product in direct competition with Plaintiff.

81. Defendant's use of Plaintiff's trade secret constitutes a violation of the Defend Trade Secrets Act, causing Plaintiff to suffer damages, and rendering the Supply Agreement terminable/voidable at will by Plaintiff.

### COUNT VII – BREACH OF CONTRACT (Indemnity)

82. Plaintiff repeats the allegations contained in Paragraphs 1 through 80 of this Complaint, as if more fully set forth at length herein.

83. Pursuant to Paragraph 5.1 of the Supply Agreement "The Processor [Defendant] shall defend, indemnify, and hold the Supplier [Plaintiff] . . . harmless from and against any and all liability, loss, damage or expense arising out of the Processor's negligence or willful misconduct related to the processing of the Product into Compounded Material."

84. Plaintiff has experienced losses, damages, and expenses arising out of Defendant's negligence due to Defendant's failure to properly process the Product into Compounded Material.

85. To date, Defendant has refused to comply with its obligations under Paragraph 5.1 of the Supply Agreement and. as such, is in breach of the Supply Agreement.

86. This breach has caused the Plaintiff damages.

WHEREFORE, Plaintiff seeks a judgment, as follows:

(a) On the First Claim, declaring that the Supply Agreement entered into by and between Plaintiff and Defendant merely required Plaintiff to supply Defendant with a minimum amount of Product, but not that it supply a minimum amount of Product for *processing* for Plaintiff, and that

the sole remedy for Plaintiff's failure to meet such a minimum supply requirement is an extension of the Supply Agreement, but not monetary damages.

(b) On the Second, Third, Fourth, and Fifth Claims, damages in an amount to be proven at trial, including consequential damages and lost profits, but in no event, less than $12,000,000, plus attorney's fees and costs.

(c) On the Sixth and Seventh Claims, damages in an amount to be proven at trial, including consequential damages and lost profits, but in no event less than 12,000,000, as well as disgorgement of all profits earned in connection with its contract with Plaintiff's former supplier, and an injunction barring Defendant's use of Plaintiff's confidential information,

(d) All, together with such other and further relief as the Court deems just and reasonable.

Dated: November 16, 2021

SMITH AMUNDSEN, LLC

*Joseph P. Trevino – electronically signed*
_____
Joseph P. Trevino, Esq.
330 East Kilbourn Avenue
Suite 1100, Tower 1
Milwaukee WI 53202-3170
414-847-6150
jtrevino@salawus.com